**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMES REILLY,<br><br>                    Plaintiff,<br><br>        vs.<br><br>VIVINT SOLAR,<br>                    Defendant. | CIVIL ACTION<br><br>NO. 18-cv-12356-NLH-JS |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO PRECLUDE PLAINTIFF'S EXPERT WITNESS EVAN HENDRICKS**

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     FACTUAL BACKGROUND ....................................................................................1

III.    LEGAL ARGUMENT ..............................................................................................3

        A.      Hendricks is Qualified Because of his Specialized Knowledge and
                Experience.....................................................................................................3

                i.      *Mr. Hendricks is a nationally recognized expert*..............................4

                ii.     *Mr. Hendricks is qualified to testify about Vivint's inadequate policies for
                        preventing unauthorized privacy invasions by its own salespersons.*..............7

                iii.    *Mr. Hendricks is qualified to testify regarding damages stemming from a
                        consumer's loss of control over their private information.* ..........................7

        B.      Hendricks's Opinions are Reliable and Will Assist the Jury.................................9

        C.      Vivint's Conclusory Objections are Meritless ...................................................13

IV.     CONCLUSION.........................................................................................................15

### TABLE OF AUTHORITIES

**Cases**

*Adams v. National Engineering Service Corp./Verifications Inc.*,
No. 07-1035 (D. Conn. 2009) ....................................................................4

*Barnett v. Chase Bank (USA) N.A.*,
No. 12-1745 (N.D. Al.) ............................................................................10

*Benedikt v. Choice Point, Inc.*,
No. 07-2569 (D.N.J. 2007) .........................................................................4

*Brancato v. Specialized Loan Servicing, LLC*,
No. 16-5504 (D.N.J. 2016) .........................................................................4

*Campbell v. Experian Information Solutions*,
No. 07-2514 (W.D. Mo. 2009) .............................................................4, 10

*Chakejian v. Equifax Information Services, LLC*,
No. 07-2211 (E.D. Pa. 2007) ......................................................................4

*Cortez v. Trans Union, LLC*,
617 F.3d 688 (3d Cir. 2010) ...............................................................11, 13

*Cortez v. Trans Union, LLC*,
No. 05-5684 (E.D. Pa. 2005) ...............................................................4, 10

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ....................................................................3, 9, 10, 12

*Drew v. Equifax Information Services, LLC*,
No. 07-726 (N.D. Cal. 2010) ...............................................................4, 10

*Fuges v. Southwest Financial Services, LTD*,
No. 09-699 (E.D. Pa. 2009) ........................................................................4

*Gamby v. Equifax Information Services*,
No. 06-11020 (E.D. Mich. 2010) ...............................................................4

*Holmes v. TeleCheck Intl., Inc.*,
No. 05-633 (M.D. Tenn. 2008) ...................................................................4

*In re MicroBilt Corp.*,
No. 11-18143 (Bank. D.N.J. 2011) .............................................................4

*In re TMI Litig.*,
193 F.3d 613 (3d Cir. 1999) ............................................................................. 10

*Jung v. Trans Union, et. al.*,
No. 07-2514 (E.D. Pa. 2007) ............................................................................. 4

*Kirkpatrick v. Equifax Information Services*,
No. 02-1197 (D. Or. 2005)................................................................... 4, 5, 10

*Kumho Tire Company, Ltd. v. Carmichael*,
526 U.S. 137 (1999)............................................................................. 3, 9, 10

*Ma v. Equifax Information Services, LLC*,
288 F. Supp. 3d 1360 (N.D. Ga. 2017) ...................................................... 12, 13

*McDonough v. JPMorgan Chase Bank, N.A.*,
No. 15-617 (E.D. Mo. 2015) ............................................................................. 4

*Merz v. Equifax Information Services, LLC*,
No. 16-259 (D.N.J. 2016) ................................................................................. 4

*Perry v. FleetBoston Financial Corp.*,
No. 04-507 (E.D. Pa. 2004). ............................................................................. 4

*Robinson vs. Equifax Information Services, LLC*,
No. 05-1272 (E.D. Va.)................................................................................... 10

*Robinson v. Equifax Information Services*,
No. 06-1336 (E.D. Va. 2007)………………………………………………….4

*Sammy v. Equifax Information Services*, LLC,
No. 14-307 (E.D. Pa. 2014) ............................................................................. 4

*Sloane v. Equifax Information Services*,
No. 05-1272 (E.D. Va. 2006)..................................................................... 4, 10

*Smith v. Ingersoll-Rand Company*,
214 F.3d 1235 (10th Cir. 2000) ........................................................................ 3

*Summerfield v. Equifax Information Services*,
No. 08-1450 (D.N.J. 2008) ............................................................................. 4

*Uzzell v. Experian Information Systems, et al.*,
No. 08-2538 (E.D. Pa. 2008) ............................................................................. 4

iii

*Valentine v. Equifax Information Services*,
  No. 05-801 (D. Or. 2005) ...............................................................................4, 10

*Waldorf v. Shuta*,
  142 F.3d 601 (3d Cir. 1998).........................................................................3

*Williams v. Equifax Information Services*,
  No. 48-2003-CA-9035 (Orange County Circuit Court, Florida) ......................................4, 10

*Wolfe v. McNeil-PPC, Inc.*,
  881 F. Supp. 2d 650 (E.D. Pa. 2012) .......................................................9

**Statutes**

15 U.S.C. § 1681...............................................................................................1

15 U.S.C. § 1681n.............................................................................................11

15 U.S.C. § 1681o.............................................................................................11

## I.    <u>INTRODUCTION</u>

Plaintiff's expert Evan Hendricks has been qualified and has served as an expert many times—in this District and elsewhere—on issues arising under the Fair Credit Reporting Act, including privacy interests implicated by the wrongful intrusion of a consumer's credit report. (Ex. A, Hendricks Report and Curriculum Vitae ("Rep/CV")).  Mr. Hendricks' expert testimony will assist the trier of fact in understanding just what a credit report is, what information it contains, how sensitive some of that information is, safeguards to prevent impermissible disclosures, the implication of Defendant's conduct in obtaining and using Plaintiff James Reilly's credit report without a permissible purpose, and the resulting harm.  Defendant Vivint Solar ("Vivint") offers no real basis upon which to preclude Mr. Hendricks' testimony.  Instead, Vivint excises phrases from relevant surrounding context, which it conveniently omits. Defendant's motion must be denied.

## II.    <u>FACTUAL BACKGROUND</u>

James Reilly filed a Complaint alleging violation of the Fair Credit Report Act ("FCRA"), 15 U.S.C. § 1681 et seq. arising from Vivint's illegal pull of their credit reports and the resulting invasion of his privacy.  Evan Hendricks, a privacy and FCRA expert, has provided a report detailing the content of a credit report and the privacy rights implicated when a consumer's credit report is improperly accessed.  Mr. Hendricks has been qualified previously as an expert in this District and others on privacy rights implicated under the FCRA.  (See generally Ex. A, Hendricks Rep./CV).

Mr. Hendricks' opinions will reveal to the jury that Vivint had reason to believe that it had a significant problem on its hands.  The report provides that "[a] myriad of complaints to the Better Business Bureau shows that [Vivint's] (allegedly) unauthorized access was part of a pattern

and practice of Defendant's misuse and abuse of the credit reporting system." (Id. at p. 2). However, despite having notice of this problem, "Defendant either did not take any action, or did 'not know' if it took any action to prevent its salesmen's continued unauthorized access to consumers' confidential credit report data after consumers complained that its salesmen impermissibly accessed their credit report data." (Id.). Vivint's inaction "exhibited a glaring lack of concern for consumers' privacy." (Id.).

Hendricks also reveals that Vivint's business operations creates backwards incentives. After reviewing Vivint's business practices, Hendricks determined that Vivint's "method of operations creates an incentive to access consumers' credit reports without their consent." He explains:

> First, its salesmen are required to meet a quota of three "accounts created" per week. Defendant's salesmen can only create an account after they facilitate the process to access consumers' credit reports. Second, to qualify for financing, a consumer's credit has to be sufficiently good. Accessing the consumer's credit report allows Defendant to learn if the consumer is capable of becoming a customer.

(Id.). Vivint salespersons come to each transaction armed with an iPad application containing consumers' personal information—pre-purchased from a third party vendor—including their names, addresses, lengths of residences, and numbers of residents. (Id.). This information is then automatically imported into a "prospective *customer consent*" form ("PCCF")—meaning it was not filled out by the consumer, making it easier to request a hard inquiry of a consumer's credit report. Salespersons also had control over whether consumers would receive email notice of the credit inquiry, including Philip Chamberlain, who engaged in "manipulation of consumers' personal information to further his sales." (Id.). According to Hendricks, Vivint failed to maintain safeguards to protect consumers from *its own salespersons*: "Defendant lacked an adequate

mechanism to identify and stop the abuse of consumer privacy that was carried out by Chamberlain and other salesman. In my opinion, the PCCF and Defendant's process relating to it was an invitation to abuse." (Id. at p. 3).

### III.   <u>LEGAL ARGUMENT</u>

**A.  Hendricks is Qualified Because of his Specialized Knowledge and Experience**

Under FRE 702, an expert may be qualified because of specialized knowledge, skill, experience, training or education. The basis for expert testimony may focus on personal knowledge or experience. *See Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). The Rule 702 inquiry is flexible because there are many different kinds of experts, and many different kinds of expertise. *Id.* (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." FRE 702 Committee Notes.

The trial court has broad discretion in considering whether to qualify an expert. *Kumho Tire Company*, 526 U.S. at 150 ("We can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert* . . . Too much depends upon the particular circumstances of the particular case at issue.")); *Smith v. Ingersoll-Rand Company*, 214 F.3d 1235, 1243 (10th Cir. 2000) (*Kumho* also makes it clear that the gatekeeping function is a flexible and common sense undertaking). In *Waldorf v. Shuta*, the Court stated that "Rule 702 requires the witness to have 'specialized knowledge' regarding the area of testimony. The basis of this specialized knowledge 'can be practical experience as well as academic training and credentials.'" 142 F.3d 601, 625 (3d Cir. 1998) (citations omitted). The Third Circuit has "interpreted the specialized knowledge requirement liberally, and have stated that this policy of liberal admissibility of expert testimony 'extends to the substantive as well as the formal qualification of

3

experts.' However, 'at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman[.]'" *Id.* (citations omitted).

Here, Mr. Hendricks is a recognized expert on the FCRA, and his opinions on consumer financial privacy are reliable. Hendricks' testimony will assist the trier fact in understanding the scope and nature of Defendant's wrongful conduct in this matter, and the resulting harm.

### i. **Mr. Hendricks is a nationally recognized expert**

With over 40 years of experience in the field of consumer information, including the specialized areas of credit reporting and privacy, Evan Hendricks is one of the nation's preeminent experts, authors, publishers and consultants on those subjects. (Ex. A, Hendricks Rep/CV). He has served as an expert in cases in federal and state courts, including in this District and Circuit. (Id. at pp. 24–39).[1] Mr. Hendricks, through his relevant and reliable testimony, has helped juries understand credit access and privacy issues, and how consumers are actually harmed.

Mr. Hendricks has been deemed qualified to testify as an expert in at least twelve FCRA *trials* just since 2005. (Id. at pp. 24–39).[2] For example, in the *Kirkpatrick v. Equifax Information*

---

[1]    *See Brancato v. Specialized Loan Servicing, LLC*, No. 16-5504 (D.N.J. 2016) (PGS); *Merz v. Equifax Information Services, LLC*, No. 16-259 (D.N.J. 2016) (PGS); *In re MicroBilt Corp.*, No. 11-18143 (Bank. D.N.J. 2011) (MBK); *Benedikt v. Choice Point, Inc.*, No. 07-2569 (D.N.J. 2007) (RK); *Summerfield v. Equifax Information Services*, No. 08-1450 (D.N.J. 2008) (JHR); *see also Cortez v. Trans Union*, No. 05-5684 (E.D. Pa. 2005) (JF); *Fuges v. Southwest Financial Services, LTD*, No. 09-699 (E.D. Pa. 2009) (LDD); *Sammy v. Equifax Information Services*, LLC, No. 14-307 (E.D. Pa. 2014) (BMS); *Chakejian v. Equifax Information Services, LLC*, No. 07-2211 (E.D. Pa. 2007) (AB); *Uzzell v. Experian Information Systems, et al.*, No. 08-2538 (E.D. Pa. 2008) (CMR); *Jung v. Trans Union, et. al.*, No. 07-2514 (E.D. Pa. 2007); *Perry v. FleetBoston Financial Corp.*, No. 04-507 (E.D. Pa. 2004).

[2]    *See Cortez v. Trans Union*, No. 05-5684 (E.D. Pa. 2005) (JF); *Drew v. Equifax Information Services, LLC*, No. 07-726 (N.D. Cal. 2010); *Campbell v. Experian Information Solutions*, No. 07-2514 (W.D. Mo. 2009); *Gamby v. Equifax Information Services*, No. 06-11020 (E.D. Mich. 2010); *Adams v. National Engineering Service Corp./Verifications Inc.*, No. 07-1035 (D. Conn. 2009); *Holmes v. TeleCheck Intl., Inc.*, No. 05-633 (M.D. Tenn. 2008); *Williams v. Equifax Information Services*, No. 48-2003-CA-9035 (Orange County Circuit Court, Florida); *Valentine v. Equifax Information Services*, No. 05-801 (D. Or. 2005); *Robinson v. Equifax Information Services*, No. 06-1336 (E.D. Va. 2007); *Sloane v. Equifax Information Services*, No. 05-1272 (E.D. Va. 2006); *Kirkpatrick v. Equifax Information Services*, No. 02-1197 (D. Or. 2005); *McDonough v. JPMorgan Chase Bank, N.A.*, No. 15-617 (E.D. Mo. 2015).

*Services*, No. 02-1197 (D. Or.), Judge Mosman deemed Mr. Hendricks qualified as an expert,

stating:

> There are things that he has reviewed that aren't readily available to the jury. There's a context of congressional action, industry issues and identity theft as a nationwide problem that would be helpful to the jury to hear from someone who has studied these issues.
>
> The sources of his study are sufficient to qualify him as an expert both with regard to what he has read, and that includes not only his own paper that he puts out, but the deposition testimony is sufficiently precise and unavailable source of expertise that it would be helpful to the jury to hear from someone who has assimilated that sort of information.

(Ex. B, Excerpt of *Kirkpatrick* Proceedings, January 18, 2005, p. 3).  In applying Mr. Hendricks'

testimony to the particulars of case, Judge Mosman went on to state:

> And my answer to that is that on most of them, I believe that his testimony is sufficiently supported by his own expertise; that is, that what he offers to this jury on the issues present in this case is sufficiently supported by his general expertise to satisfy Rule 702.
>
> As a general statement, what I am allowing and the reason I am allowing it is testimony that puts the particular actions of the defendant in particular here in context, in the context of the nationwide problem of identity theft, in the context of the congressional reaction to that and other issues in the credit-reporting industry, when he can by virtue of his study and prior testimony, both in court and to Congress, make comparisons, then that's something that's helpful the to the jury.

(*Id*. at p. 5).

Mr. Hendricks has testified many times before Congress and the FTC—always by

invitation—including twice by Sen. Richard Shelby, Chairman of the Senate Banking Committee.

(Ex. A, Hendricks Rep/CV, at p. 21).  His testimony before the House Financial Services

Subcommittee on Commerce, Trade and Consumer Protection in June 2006 was on the subject of

"Privacy in the Commercial World II," and in 2005 was on the subject of "Identity Theft: Recent

Developments Involving the Security of Sensitive Consumer Information."  (Id.).  Mr. Hendricks

has also written a book on information privacy entitled "Your Right to Privacy: A Basic Guide to Legal Rights in An Information Society," in addition to editing and publishing the *Privacy Times* for over 30 years.  (Id. at pp. 18, 22).

Mr. Hendricks has appeared on nearly every major media outlet, and has been quoted by most major newspapers on the subject of credit access and privacy rights. (Id. at p. 23).  He has also made presentations and provided instruction at CLE and professional seminars sponsored by the University of California,-Berkeley (2011), National Association of Consumer Advocates (2011), the National Consumer Law Center (2010), the Commercial Law League of America (2010), the Texas Bar Association (2010), and the Florida Bar Association (2009).  (Id. at pp. 22–23).

Mr. Hendricks was previously retained as an expert in FCRA litigation brought by the Federal Trade Commission ("FTC"), the agency responsible for governmental enforcement of credit reporting, and was admitted to testify as an expert in that case despite the defendant's motion to exclude. (Id. at p. 28).  From 2002–2004, Mr. Hendricks served as a member of ***Experian's*** Consumer Advisory Council where, with other council members, he provided an outsider's view on credit reporting, marketing and other privacy issues. (Id. at p. 20).   He also passed an industry examination and earned an "FCRA Certification" from the National Credit Reporting Association. (Id. at pp. 19, 23).   Experian has acknowledged Mr. Hendricks as a privacy expert.  (Id. at pp. 18–19).

Mr. Hendricks has been recognized as an expert on "Fair Information Practices," which are at the core of the FCRA and privacy and data protection laws, and serve an internationally accepted standard for gauging privacy policy and practices. (Id. at p. 18).  From 1998–2007, Mr. Hendricks served as an expert consultant on credit and privacy issues as a member of the panel

for the Social Security Administration, where he regularly reviewed policies and practices in relation to the collection, use, and disclosure of personal data. (Id. at pp. 19).   He also served as a consultant to the U.S. Postal Service in their review of their privacy policies. (Id. at p. 20).

### ii. Mr. Hendricks is qualified to testify about Vivint's inadequate policies for preventing unauthorized privacy invasions by its own salespersons

After reviewing the evidence, Mr. Hendricks determined that Vivint lacked "mechanisms and/or procedures . . . to stop impermissible accesses of credit reports and obtaining and using consumer reports without a permissible purpose under the FCRA." (Id. at p. 12).  This opinion was based on his decades of experience in the field of consumer privacy, consulting for the Social Security Administration, the U.S. Postal Service, and others regarding consumer privacy policies and issues.

Despite Mr. Hendricks' impressive experience, Vivint contends that Mr. Hendricks "should not be allowed to testify regarding Vivint Solar's management of employees, training, policies, or procedures in this case" because he lacks the qualifications to do so. (Def.'s Br. at p. 9).  This argument appears to stem from the false premise that Mr. Hendricks' experience is limited to his work as an expert in litigation.  (Id.).  As demonstrated above, this premise ignores decades of relevant experience consulting for companies and federal agencies on consumer privacy policies and issues.  He is more than qualified to render an opinion on the inadequacy of Vivint's policies and procedures.

### iii. Mr. Hendricks is qualified to testify regarding damages stemming from a consumer's loss of control over their private information.

Vivint also mischaracterizes Mr. Hendricks' opinions on damages, stating that he will "testify regarding the mental distress that Reilly allegedly experienced[.]" (Def.'s Br. at p. 9). This argument is a red herring.  Mr. Hendricks does not and will not offer opinions about whether

Reilly experienced emotional distress.  Rather, Mr. Hendricks is qualified to provide expert testimony that will help the jury understand: (1) what types of privacy interests are relevant to this case (as there are many types of privacy interests), and (2) whether Defendant's actions infringed Plaintiff's privacy interests, and if so, which ones.

This case involves Vivint's decision to cause an unauthorized hard inquiry into Plaintiff's consumer credit report.  To understand the impact of a hard inquiry on a consumer's credit and the damages stemming from that inquiry, the average layperson would benefit from background "context in the form of a brief history of privacy, the FCRA and the Fair Information Practice Principles (FIPs) underlying it." (Ex. A, Hendricks Rep/CV, at p. 12–13).

Mr. Hendricks' report lays out this relevant context and the privacy standards they have manifested. (Id. at pp. 13–16).  The report also sets forth how existing privacy standards aim to "ensure that individuals maintain reasonable control over their personal information," and explains that consumers are damaged "when they unreasonably lose control over their personal information." (Id. at p. 14).  To fully comprehend the nature of this privacy invasion into one's credit information, the jury would benefit from understanding this surrounding context, which sheds light on the exact privacy interests at stake when someone unjustifiably accesses another's consumer credit report.  After all, it is foreseeable that a juror might not understand what a consumer credit report is, and how impermissible access of such a report implicates privacy concerns.

Further, Mr. Hendricks' report explains generally the harm stemming from an unauthorized hard inquiry.  "Impermissible access is one of the most egregious forms of invasion of privacy because it means the privacy violator is obtaining personal data for a purpose not authorized by law." (Id. at p. 16).  An unauthorized inquiry "causes harm because it distorts the

consumer's credit history by making it look like he/she applied for an account that he/she in fact did not apply." (Id. at pp. 2, 7).

According to Mr. Hendricks' first-hand interviews with victims of unjustified privacy invasions, their harm manifests in many ways, including: failure to concentrate, sleeplessness, strained personal relationships, impaired job performance, and emotional distress. (Id. at p. 15). The fact that other consumers complain about the exact type of emotional distress that Reilly experienced <u>lends credibility to Reilly's claimed damages</u>—which includes emotional distress. Mr. Hendricks is more than qualified to share his specialized knowledge about the emotional distress that victims of privacy invasions have "consistently" complained about during the 40 years that he has "intimately followed privacy developments[.]" (Id.).

The average layperson does not have specialized knowledge about the credit reporting industry's role in maintaining privacy of consumer data.  Without such information, the average layperson told about an "impermissible pull" will possess only an incomplete picture of how such a pull would cause harm to consumers' privacy interests.  Mr. Hendricks' decades of experience in the industry and dealing with consumer-victims makes him more than qualified to provide the necessary background context from which the jury could fully comprehend the nature of consumer privacy interests in the 21st century.

**B.  Hendricks's Opinions are Reliable and Will Assist the Jury**

The Court has broad discretion in determining whether an expert's opinion is reliable. *See Wolfe v. McNeil-PPC, Inc.*, 881 F. Supp. 2d 650, 655 (E.D. Pa. 2012) ("The Supreme Court held in *Kumho Tire* that the *Daubert* test of reliability is 'flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'") (*citing Kumho Tire Company*, *supra*, 526 U.S. at 141–42).

"*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts." *Kumho*, 526 U.S. at 141.  The Third Circuit has explained that "the standard for determining reliability 'is not that high[.]'" *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999).

Mr. Hendricks' opinions are reliable and will assist the jury in understanding the Defendant's "glaring lack of concern for consumers' privacy," and that Defendant needed but lacked the "mechanisms and/or procedures in place to stop impermissible accesses of credit reports" without a permissible purpose.  (Ex. A, Hendricks Rep/CV, at p. 12).[3]

Mr. Hendricks' opinion is based on his review of Defendant's problematic business practices when considered in light of the prevailing privacy standards that Hendricks himself helped create over the course of his career.  He explains how Defendant's "method of operations creates an incentive to access consumers' credit reports without their consent." (Id. at pp. 2, 5).

> **First**, its salesmen are required to meet a quota of three "accounts created" per week. Defendant's salesmen can only create an account after they facilitate the process to access consumers' credit reports. **Second**, to qualify for financing, a consumer's credit has to be sufficiently good. Accessing the consumer's credit report allows Defendant to learn if the consumer is capable of becoming a customer.

(Id. at p. 2, emphasis added).   Hendricks explains that Defendant's sales force approaches prospective customers with previously acquired information that is automatically populated on a Prospective Customer Consent Form (PCCF) without the consumer's input.  (Id.).  Defendant's prior collection of this personal information "facilitated" the unauthorized access of Plaintiff's credit report. (Id. at pp. 3, 6).  Vivint "lacked an adequate mechanism to identify and stop the

---

[3]      Mr. Hendricks' CV points to several prior instances in which *Daubert* challenges were filed and rejected by courts, including *Cortez v. Trans Union, LLC.*, 05-5684 (E.D. Pa.); *Barnett v. Chase Bank (USA) N.A.*, No. 12-1745 (N.D. Al.); *Williams v. Equifax Information Services*, No. 48-2003-CA-9035 (Orange County Circuit Court, Florida); *Drew v. Equifax Information Services, LLC*, No. 07-726 (N.D. Cal.); *Campbell v. Experian Information Solutions*, No. 07-2514 (W.D. Mo. 2009); *Valentine v. Equifax Information Services*, No. 05-801 (D. Ore.); *Robinson vs. Equifax Information Services, LLC*, No. 05-1272 (E.D. Va.); *Sloane v. Equifax Information Services, LLC*, No. 05-1272 (E.D.Va.); *Kirkpatrick v. Equifax, LLC*, No. 02-1197 (D. Ore.). (Ex. A, Hendricks Rep/CV, at pp. 23–38).

abuse of consumer privacy that was carried out by Chamberlain and other salesman," and "Defendant's process relating to [the consent forms] was an invitation to abuse." (Id. at p. 3).

Willfulness is also an issue in this case.  *See* 15 U.S.C. § 1681n.  Mr. Hendricks' testimony—touching as it does on industry practices in the acquisition of private consumer data from consumer reporting agencies—will assist the factfinder in deciding whether the Defendant's actions were willful or negligent. *Id.*; *see also* 15 U.S.C. § 1681o.

According to Hendricks, the testimony of Vivint's designee also illustrates the inadequacy of Vivint's response to numerous allegations of unauthorized access of credit reports. (Ex. A, Hendricks Rep/CV. at pp. 4–5).  Vivint had notice of a myriad of consumer complaints regarding unauthorized hard inquiries. (Id. at p. 2).  Instead of investigating these complaints thoroughly, Vivint's designee testified that she did not know or recall Vivint's response to these allegations. (Id. at pp. 4–5).  This inaction—Hendricks opines—demonstrates a lack of adequate concern about ensuring that Vivint did not wrongly invade consumers' privacy.  (Id. at p. 5).  Vivint should have investigated the "root-cause" of these allegations, and should have "taken the necessary steps to ensure that its salesmen stopped accessing consumers' credit reports without their consent or without a permissible purpose." (Id.).

Vivint's failure to take these steps made it "foreseeable" that it "would be the target of a plethora of complaints about misuse of the credit reporting system in New Jersey and around the nation." (Id. at pp. 1, 5).  In Hendricks' opinion, "Defendant's failure to enforce a policy to ensure that its salesmen did not impermissibly access credit reports figuratively served as an invitation to abuse." (Id. at p. 5).  These opinions could readily support a jury's finding that Vivint violated the FCRA willfully.  *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 721 (3d Cir. 2010) (defendant can willfully violate the FCRA "by adopting a policy with reckless disregard of whether it

11

contravenes a plaintiff's rights under the FCRA").

Mr. Hendricks' opinions on these topics are based on privacy standards, including the principles of "Fair Information Practices." (Id. at pp. 1, 13–14).  These principles include, *inter alia*, the requirement that "there must be a way for an individual to prevent information about him or her obtained for one purpose from being used or made available for other purposes without his/her consent." (Id. at p. 13).  Mr. Hendricks can permissibly provide testimony on how Vivint's policies and practices fall far short of meeting these privacy standards.

Mr. Hendricks' opinions are based on his specialized knowledge of the credit reporting industry and his decades of experience consulting on privacy policies and issues.  His opinions have been deemed reliable in other "non-scientific" cases, including *Ma v. Equifax Information Services, LLC*, where the court explained:

> [I]n non-scientific cases such as this one, "the relevant reliability concerns may focus on an expert's personal knowledge or experience."  In addition, "expert testimony that does not meet all or most of the *Daubert* factors may sometimes be admissible" based on the particular circumstances of a specific case.  As discussed above, Mr. Hendricks has accumulated a wealth of personal knowledge and experience in consumer credit reporting agency practices. Therefore, the Court finds that Mr.  Hendricks's methods are sufficiently reliable, and that Defendant's objections go more towards the weight of Mr. Hendricks's testimony than to its admissibility.

288 F. Supp. 3d 1360, 1366 (N.D. Ga. 2017) (internal citations omitted).

Vivint mischaracterizes the Hendricks report as providing testimony on Vivint's "subjective motivation," but this is a gross mischaracterization of the report.  Hendricks opines on the adequacy of Vivint's policies and procedures and its responses to consumer complaints, which he describes as exhibiting a "glaring lack of concern for consumers' privacy."  (Ex. A, Hendricks Rep/CV, at p. 2).  In other words, Hendricks does not opine on Vivint's subjective

intent or beliefs, but instead opines about Vivint's inadequate procedures and unresponsiveness to "myriad" consumer complaints.  Consumers who lack Hendricks' specialized knowledge of the treatment of consumer information in the credit industry may not fully appreciate the extent that Vivint's inadequate internal processes made Reilly's privacy intrusion all the more foreseeable.

Further, Mr. Hendricks' opinions on the nature of the harm felt by those whose privacy was invaded in the same way as Plaintiff is reliably based on his first-hand interactions with victims over the past 40 years. (Id. at p. 15).  Such opinions are also supported by findings from government entities like the Congressional Office of Technology Assessment and Congress itself. (Id. at p. 15–16). *See also Cortez*, 617 F.3d at 720 (stress and anxiety are "precisely the kind of injury that Congress must have known would result from violations of the FCRA").[4]

Mr. Hendricks' opinions—drawn from his specialized knowledge discussed at length above—are reliably based on his decades of experience with privacy standards and consumer victims.  Such opinions will assist the jury in understanding the needed procedures to ensure protection and respect for consumer privacy in connection with obtaining consumer credit reports, the importance the FCRA places on prohibiting impermissible access to consumer credit reports—to the point of criminalizing the conduct—and the nature of the harm and damages suffered by victims of impermissible credit access.

### C.  Vivint's Conclusory Objections are Meritless

Despite the clear helpfulness and relevance of Hendricks' specialized knowledge, Vivint contends that the jury will not benefit from it because "none of this is complicated" and the evidence on which Hendricks opines can be admitted "through the testimony of [unidentified]

---

[4]     Mr. Hendricks was Plaintiff's expert who was qualified and testified in the jury trial of the *Cortez* case.

fact witnesses." (Def's Br. at p. 17).  But there is no witness aside from Hendricks who is competent to testify about privacy standards and whether Vivint's business practices created a foreseeable risk that Reilly's privacy would be invaded by Vivint's own salespersons. Regardless, the *potential* existence of fact witnesses who can provide testimony relating to Hendricks' opinions does not mean that Hendricks' opinions somehow become unhelpful.

Further, Vivint contends that Chamberlain did *not* forge the PCCF and the other documents, and it has consistently denied the existence of a pattern and practice of wrongdoing that would have put it on notice of the inadequacy of its procedures for accessing consumer credit information from the consumer reporting agencies.  These are hotly contested issues.  To the extent Hendricks opines on these disputed issues, this Court can instruct the jury that they may consider Hendricks' testimony in conjunction with all other admissible evidence, and like other evidence, they may give it whatever weight they deem appropriate.

Vivint also argues that Hendricks' opinions are legal conclusions, but it noticeably fails to call out any one opinion in particular when it cites broadly to five pages of his Report.  (Def.'s Br. at p. 18).  Additionally, in conclusory fashion, Vivint outright misrepresents Hendricks' conclusions, stating that Hendricks opined that "the Vivint Solar credit inquiry was unauthorized and not for a permissible purpose[.]" (Id.).  Hendricks offers no such opinion.  Instead, he points out that Vivint's inadequate procedures were insufficient to prevent impermissible accesses of credit reports. (Ex. A, Hendricks Rep/CV, at pp. 1–4, 12).  The other purported conclusions identified in passing by Vivint are not legal conclusions, but are factual statements based on the evidence and his specialized knowledge. (Def.'s Br. at p. 18).  As this Court will instruct the jury, they are entitled to give Hendricks' opinions their due weight.

Vivint may not like that Hendricks points out the flaws in its business practices, which

14

created foreseeable risks of harm to consumers.  But that is no basis to broadly brand such testimony as "legal conclusions."  Vivint's argument on this point is yet another red herring.

**IV.   CONCLUSION**

Mr. Hendricks is a nationally recognized expert on matters arising under the Fair Credit Reporting Act, including related privacy interests.  His opinions, as demonstrated in prior matters, are reliable and will assist the trier of fact.  Defendant's motion to preclude Mr. Hendricks' testimony should be denied.

Respectfully submitted:

Date:   12/2/2019   

   /s/ Andrew M. Milz   
CARY L. FLITTER
ANDREW M. MILZ
JODY THOMAS LÓPEZ-JACOBS
Attorneys for Plaintiff

FLITTER MILZ, P.C.
1814 E Route 70, Suite 350
Cherry Hill, NJ 08003
(610) 822-0785

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES REILLY, | CIVIL ACTION |
|        Plaintiff, | |
|    vs. | NO. 18-cv-12356-NLH-JS |
| VIVINT SOLAR, | |
|        Defendant. | |

## CERTIFICATE OF SERVICE

I, Andrew Milz, hereby certify that a copy of Plaintiff's Opposition to Defendant's Motion to Preclude Plaintiff's Expert Evan Hendricks has been electronically filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.  All counsel was also served by email.

Date:  12/2/2019                    /s/ Andrew M. Milz          
                                    ANDREW M. MILZ