```
             UNITED STATES DISTRICT COURT
                DISTRICT OF NEW JERSEY
```

```
  JAMES REILLY,                    1:18-cv-12356-NLH-JS

            Plaintiff,             OPINION

       v.

  VIVINT SOLAR,

            Defendant.
```

**APPEARANCES:**

ANDREW M. MILZ
FLITTER MILZ, P.C.
1814 EAST ROUTE 70
SUITE 350
CHERRY HILL, NEW JERSEY 08003

JODY THOMAS LOPEZ-JACOBS
FLITTER MILZ, P.C.
1814 EAST ROUTE 70
SUITE 350
CHERRY HILL, NEW JERSEY 08003

   *Attorneys for Plaintiff.*

DANIEL J.T. MCKENNA
BALLARD SPAHR LLP
210 LAKE DRIVE EAST
SUITE 200
CHERRY HILL, NEW JERSEY 08002-1163

JENNY NICOLE PERKINS
BALLARD SPAHR LLP
1735 MARKET STREET
51ST FLOOR
PHILADELPHIA, PENNSYLVANIA 19103

   *Attorneys for Defendant.*

**HILLMAN, District Judge**

This Fair Credit Reporting Act ("FCRA") and identity theft matter comes before the Court on Defendant Vivint Solar's ("Defendant") motion to preclude the expert testimony of Evan Hendricks ("Hendricks"), Plaintiff James Reilly's ("Plaintiff") putative expert. (ECF No. 61). For the reasons that follow, Defendant's motion will be granted in part and denied in part.

## BACKGROUND

The parties are keenly aware of the facts at issue in this action and the Court recently discussed them at length in deciding Defendant's motion for summary judgment. Relevant facts are repeated here only to the extent necessary to resolve this motion.

Defendant sells solar panels and, through its salesman Phillip R. Chamberlain ("Chamberlain"), communicated with Melissa Knight ("Knight"), the owner of Plaintiff's former home, about installing a solar panel system on her property. Despite Plaintiff having no contact with Knight or Defendant about the purchase Knight was making, Chamberlain forged various documents in support of Knight's purchase. Those documents suggest that Plaintiff was somehow involved in Knight's purchase. Defendant relied upon these forged documents to conduct a hard credit inquiry into Plaintiff's credit worthiness and further, to lodge liens against him. As a result of Defendant's unauthorized

actions, Plaintiff alleges he suffered emotional distress and other damages associated with remediating the harm Defendant caused.

Plaintiff intends to rely upon Hendricks' expert opinions in furtherance of his case.  Hendricks has submitted an expert report pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure.  (ECF No. 65-2).  Based upon the contents of that report, it appears Plaintiff intends to call Hendricks to provide expert testimony (1) regarding the FCRA and consumer privacy generally, (2) as to whether Defendant's actions complied with the FCRA, (3) as to whether Defendant exhibited behavior in reckless disregard for consumer privacy and safety, (4) the harm generally caused by unauthorized credit inquires, and (5) the damages that Plaintiff could be expected to suffer as a result of Defendant's actions.  Defendant moves to exclude Hendricks' testimony, arguing that Hendricks' opinions do not satisfy Federal Rule of Evidence 702 and the standards set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).  Defendant's motion has been fully briefed as is ripe for adjudication.

**DISCUSSION**

I.  **Subject Matter Jurisdiction**

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

II. **Legal Standard**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and Daubert, 509 U.S. at 579, 113 S. Ct. at 2786, 125 L. Ed. 2d at 469.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Third Circuit has described the requirements of Federal Rule of Evidence 702 as a "trilogy of restrictions on expert testimony: qualification, reliability and fit."  Calhoun v. Yamaha Motor Corp., 350 F.3d 316, 321 (3d Cir. 2003) (quoting Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)).  "[T]he district court acts

as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." Schneider, 320 F.3d at 404. "The party offering the expert testimony bears the burden of establishing the existence of each factor by a preponderance of the evidence." Raritan Baykeeper, Inc. v. NL Indus., No. 09-4117, 2017 WL 3568401, at *2 (D.N.J. Aug. 16, 2017).

### III. Defendant's Motion

Defendant argues that Hendricks' testimony must be excluded because (1) Hendricks is not qualified to testify regarding Defendant's "lack of concern" for consumer privacy, (2) Hendricks is not qualified to testify regarding Plaintiff's damages or damages in general, (3) Hendricks lacks a sound methodology for his opinions, and (4) Hendricks' opinions do nothing more than recite law and fact, and therefore, will not assist a jury.

A. Hendricks Is Qualified To Testify About Privacy Procedures and Policies

Before an expert witness may offer an opinion pursuant to Rule 702, he must first be qualified by virtue of specialized expertise. Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)). Rule 702 requires the witness to have "specialized knowledge" regarding the area of testimony. Id.

(quoting Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998)). The basis of this specialized knowledge "can be practical experience as well as academic training and credentials." Id. (quoting Waldorf, 142 F.3d at 625). The Third Circuit has interpreted the specialized knowledge requirement liberally. Id. (quoting Waldorf, 142 F.3d at 625). A proffered expert witness must possess skill or knowledge greater than the average layman. Id. (quoting Waldorf, 142 F.3d at 625).

Defendant argues that Hendricks' only qualifications for testifying about Defendant's privacy policies and procedures flows from his role as a consumer advocate and prior testimony as an expert. Defendant views Hendricks' relevant experience in this area too narrowly. Hendricks' *curriculum vitae* reveals he consulted for the United State Social Security Administration on privacy issues, policies, and practices between 1998 and 2006. Similarly, Hendricks consulted with the United States Postal Service on privacy issues, including by reviewing and editing privacy notices, between July 2002 and October 2002. Additionally, Hendricks has testified before various committees of the United States House of Representatives and United States Senate about credit scores, credit reports, the FCRA, and data privacy.

Based upon these collective experiences, Hendricks has

6

evinced a knowledgebase greater than that of a layperson in the areas of credit scores, credit data security, and the polices used in the industry to ensure compliance with applicable data privacy regulations.  As such, Hendricks is qualified to provide testimony as to the basics of credit reporting and credit data privacy, and the polices used in the industry relevant thereto. This includes the issues of industry standards for data privacy policies as they relate to credit inquiries.

Notably, the Court does not reach this decision in a vacuum; other courts have reviewed Hendricks' qualifications in similar contexts and have reached similar conclusions about the scope of his expertise.  See, e.g., Brown v. Vivint Solar, Inc., No. 18-cv-2838, 2020 WL 1479079, at *2 (M.D. Fla. Mar. 26, 2020) ("Hendricks is qualified to testify about the FCRA generally and credit reporting issues [and] to the extent that Hendricks opines regarding the industry standards for preventing privacy invasions, as well as comparing Defendants' conduct to industry standards, such is within his experience and expertise"); Williams v. First Advantage LNS Screening Solutions Inc., No. 13-cv-222, 2015 WL 9690018, at *2 (N.D. Fla. Mar. 31, 2015) ("Hendricks' experience qualified him as an expert on consumer reports . . . and industry standards pertaining to FCRA compliance"); McDonough v. JPMorgan Chase Bank, N.A., No. 15-cv-

617, 2016 WL 4944099, at *2 (E.D. Mo. Sept. 30, 2016) (finding Hendricks' experience qualified him to testify regarding standard credit reporting policies and procedures).

Therefore, to the extent Defendant moves to exclude Hendricks' testimony on this basis, that motion will be denied.

> B. <u>Hendricks Is Not Qualified To Testify About Plaintiff's Damages, Physical Or Emotional, Or The Damages That Would Be Expected To Flow From An FCRA Violation</u>

Defendant argues that Hendricks is not qualified to testify about Plaintiff's physical or emotional damages, or the physical or emotional damages caused by an FCRA violation.  Plaintiff represents that Hendricks is not being offered to opine on whether Plaintiff actually suffered emotional distress.  Instead, Plaintiff says that Hendricks conducted first-hand interviews with victims of privacy invasions and concluded that the physical and emotional harm from such injuries manifests in a number of ways, which Hendricks can testify about, and which testimony will corroborate Plaintiff's allegation that he suffered emotional distress.  Plaintiff's framing of Hendricks' testimony does not mask its true intention: Hendricks is being offered to testify about the type of physical and emotional harm expected to present after an invasion of the type Plaintiff alleges.  Hendricks is not qualified to offer such testimony.

This Court looks to Hendricks' experience to determine

whether he possesses specialized knowledge on this topic. Elcock, 233 F.3d at 741; Waldorf, 142 F.3d at 625.  Hendricks' *curriculum vitae* reveals no experience, education, or qualification in assessing physical or emotional damages, nor does he demonstrate a proficiency to support his opinion that privacy injuries necessarily cause emotional harm.  Indeed, Plaintiff appears to argue that because Hendricks surveyed victims of privacy invasions about their physical manifestations following their experiences, he is qualified to opine on those underlying manifestations.  Simply polling a small group of individuals about their experiences, however, does not render someone an expert in the underlying information reported.[1]  Nor does such activity provide a knowledgebase greater than what may be possessed by layperson jurors.  In rejecting Plaintiff's argument on this front, this Court joins a litany of other courts to have done the same.  See, e.g., Brown, 2020 WL 1479079, at *3 ("Hendricks is not qualified to opine regarding Plaintiffs' emotional or physical damages or the emotional and physical damages that generally arise from FCRA violations");

---

[1]  Notably, neither Plaintiff nor Hendricks provide information about this study that would permit the Court to conclude it was reliable or conducted with sound methodology.  For example, Plaintiff does not explain who was studied, the questions posed to study participants, or the methods used to identify subjects and gather information.  The absence of such information further underscores this Court's decision to bar such testimony.

Valenzuela v. Equifax Info. Servs. LLC, No. 13-cv-2259, 2015 WL 6811585, at *3 (D. Ariz. Nov. 6, 2015) ("Hendricks is not qualified to address physical, emotional, or economic effects of an inaccurate credit report"); Anderson v. Equifax Info. Servs., LLC, No. 16-cv-2038, 2018 WL 1542322, at *5 (D. Kan. Mar. 29, 2018) ("[Hendricks'] opinions regarding Plaintiff's damages amount to little more than speculation as to the injuries Plaintiff incurred"); Malverty v. Equifax Info. Servs., LLC, No. 17-cv-1617, 2019 WL 5549146, at *2 (M.D. Fla. Oct. 28, 2019) (Hendricks' opinions "about the types of damages that are common to plaintiffs in comparable circumstances would not assist the jury, as it will be instructed on the proper measure of damages").

As such, Hendricks will not be permitted to testify about Plaintiff's damages, damages that he believes commonly present in privacy invasion victims, or the information gathered during his interviewing of other privacy breach victims.  To the extent Defendant moves to bar such testimony, Defendant's motion will be granted.

### C. Hendricks' Lack Of Rigid Methodology Is No Basis For Precluding Him From Testifying

Defendant argues that Hendricks has not provided adequate methodology for his opinions and therefore, his testimony must be excluded.  Plaintiff argues that Hendricks' experience and

knowledge from working in the credit and privacy industries qualify him to provide expert testimony in this action.  Because the testimony that this Court will permit relies exclusively upon Hendricks' experience in the relevant fields, the Court will not bar his testimony based upon a lack of methodology.

The objective of this Court's gatekeeping function is to "ensure the reliability and relevancy of expert testimony." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 153, 119 S. Ct. 1167, 1176, 143 L. Ed. 2d 238 (1999).  The Court is charged with ensuring that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id.  The Supreme Court has recognized that the particular inquires made by district courts in carrying out this obligation must not be rigid, but rather, trial judges must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.  Id.  "The trial court must have the same kind of latitude in deciding how to test an expert's reliability . . . as it enjoys when it decides whether or not that expert's relevant testimony is reliable."  Id.

As this Court explained, Hendricks' *curriculum vitae*

11

reveals he has been actively engaged in the privacy industry, through consulting roles and otherwise, for more than thirty years. Both the United States Senate and House of Representatives have relied upon his testimony, as have a number of courts throughout the country. He has consulted for large governmental organizations on privacy policy implementation and review. Hendricks represents that the methodology behind his opinions flows from this experience; the Court agrees. While Hendricks' methods are not necessarily explained in detail, he adequately explains how he will apply his experiences to the facts of this case to render opinions. The Court finds that such methods and experiences render Hendricks capable of opining on the issues of general privacy background and standards relating to acceptable, industry-standard practices for privacy policy implementation and execution. Other courts to have considered the issue have reached similar conclusions:

> Hendricks will opine on the reasonableness of [the defendant's] actions and/or inactions. His testimony is based on his experience and research in FCRA matters. Thus, his method is simply an application of his experience with an[] understanding of the FCRA and the credit reporting industry to the facts at hand. Although his methods are not meticulously detailed for every conclusion, they can be understood and are reliable. Moreover, "shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."

Brown, 2020 WL 1479079, at *3-4 (quoting Valenzuela, 2015 WL 6811585, at *2) (internal citations omitted); Ma v. Equifax Information Services, LLC, 288 F. Supp. 3d 1360, 1366-67 (N.D. Ga. 2017) (finding Hendricks' methods sufficiently reliable). Therefore, the Court will not bar Hendricks' testimony for lack of articulated methodology.

   D. Hendricks' Opinions May Assist The Jury

    Defendant argues that Hendricks' opinions will not assist the jury and they are therefore inadmissible under Rule 702 of the Federal Rules of Evidence.  Particularly, Defendant argues that Hendricks' opinions are little more than common sense observations, are otherwise speculative and baseless, or otherwise simply recite evidence or law.

    Rule 702 requires an expert witness to have "specialized knowledge" regarding the subject matter on which the testimony is offered.  Elcock, 233 F.3d at 741; Waldorf, 142 F.3d at 625. Such knowledge must be more robust than would be possessed by the average layperson.  Elcock, 233 F.3d at 741; Waldorf, 142 F.3d at 625.  With that standard in mind, the Court turns to the opinions Hendricks seeks to offer, as identified in his Rule 26(a)(2) report under the section titled "summary of opinions." Hendricks seeks to provide sixteen (16) separate opinions marked

13

by bullet points in his report. The Court addresses each in the order they appear in his report, beginning with the first.

Hendricks' first two opinions relate to the general impact of hard credit inquiries on a consumer's credit report and the impact such inquires have on a consumer's ability to obtain credit. Hendricks' testimony on these general matters may help a jury understand these issues, which are relevant to this action and within his sphere of knowledge. Therefore, Hendricks will be permitted to testify on these topics. See Brown, 2020 WL 1479079, at *4 (finding that Hendricks may testify about "hard inquiries and their effect on a credit file" and that such testimony "will aid the jury" in understanding the issues in a nearly identical action).

Hendricks' third, fourth, fifth, sixth, and seventh opinions — that unauthorized access to credit information causes harm; that continued complaints to the Better Business Bureau evince Defendant's lack of concern about customer privacy; and that Defendant's sales practices incentivize its salesmen to access credit reports without consent — are conclusory statements that fall afield of the scope of permissible expert testimony. These are summary conclusions drawn from Hendricks' interpretation of facts as he understands them. These conclusions must be left for the jury to reach after it has had

14

an opportunity to consider the facts established at trial. Similarly, Hendricks seeks to opine on Defendant's motivations and intentions, including any purported "lack of concern" for consumer privacy or "incentives" created by Defendant's policies for salesmen to violate consumer privacy laws. Whether Defendant's actions evidence any motivation or specific intent must be a decision left to the jury. Therefore, like several courts before this one to have considered this issue in the context of Hendricks' proposed testimony, the Court concludes Hendricks' testimony on these topics would usurp the function of the jury as factfinder, and therefore, shall not be permitted. Brown, 2020 WL 1479079, at *4; Anderson, 2018 WL 1542322, at *5; Valenzuela, 2015 WL 6811585, at *3.

Hendricks' eighth, ninth, and tenth opinions — that Defendant's salesmen obtained information about potential customers without permission, that these salesmen used that information to complete credit applications and Prospective Consumer Consent Forms ("PCCFs") to initiate a credit inquiry without the consumers' knowledge or authorization, and that salesmen were "facilitated" in these efforts by prior collection of information — is entirely speculative. As Hendricks recognizes, his opinions assume facts in dispute. See, e.g., (ECF No. 65-2 at 2) (suggesting Defendant used "information

15

which Defendant (most likely) purchased from a third-party vendor") (emphasis added).  Because Hendricks' opinions are speculative, they are not reliably accurate and would not assist the jury in deciding this case.

Moreover, if Plaintiff presents evidence at trial that the salesmen did, in fact, have access to the information required to fill out credit applications and PCCFs, a jury need not hear Hendricks testify that it was possible for the salesmen to use that information to forge electronic PCCFs without the customers' knowledge; such a conclusion would be readily apparent to layperson jurors. The Court recognizes that the Brown court reached a different conclusion on the admissibility of Hendricks' testimony on this subject.  This Court respectfully disagrees with its sister court in Florida. Hendricks has not exemplified any knowledge about Defendant's iPad technology or software programing.  Nor has Hendricks exhibited for this Court any knowledge about Defendant's internal structure that would make him an authority on a salesman's ability to create forged PCCFs.  Instead, Hendricks appears to simply opine that if the foundational information required by the PCCF was available to a salesman, they could use that information to complete a forged PCCF.  Such would be

16

apparent to a layperson. As such, this Court will not permit Hendricks to testify on this subject.

Hendricks' eleventh opinion is that the incorrect email address listed on the PCCFs at issue in this case contain errors similar to those appearing on other PCCFs that Chamberlain was involved with producing. Hendricks concludes that the similarity in errors establishes a pattern of wrongful behavior by Chamberlain. This opinion is conclusory and usurps the factfinder's authority to draw conclusions from facts in the record. A jury of laypeople is more than qualified to review the evidence of similarity between PCCFs that may be entered into evidence and draw conclusions about them without the assistance of an expert. As such, Hendricks will not be able to testify on this topic.

Hendricks' twelfth opinion is that Defendant lacked adequate processes to prevent the unauthorized access of Plaintiff's consumer credit report. Hendricks opines that these processes invited abuse by salespeople. As this Court previously discussed, Hendricks may testify regarding industry standards for preventing unauthorized access to consumer credit reports and whether Defendant's procedures were consistent with industry standards. See Brown, 2020 WL 1479079, at *5 (reaching

the same conclusion and collecting cases reaching a similar conclusion).

Hendricks may not, however, testify as to the ultimate issue in this case – which relies heavily on Defendant's intent. Hendricks' twelfth, thirteenth, fourteenth, fifteenth, and sixteenth opinions – that Defendant "invaded and therefore harmed Plaintiff's privacy," that Defendant's use of electronic forms invited abuse, and that Defendant "effectively made identity theft part of its method of operation" – do just that, and will not be permitted.  For example, Hendricks cannot opine that Defendant's processes and procedures invited abuse or that Defendant negligently or intentionally crafted polices that would foster abusive practices.  Nor can Hendricks offer opinion that Defendant is at fault for the alleged unauthorized access to Plaintiff's credit reports, or that Defendant violated the FCRA.  Those are determinations that if made at all, must be made by the jury, and they need no help from Hendricks in conducting that analysis.  See Brown, 2020 WL 1479079, at *5 (reaching a similar conclusion and collecting cases doing the same).

Additionally, the Court finds Hendricks cannot testify regarding other portions of his expert report.  Hendricks cites to legal authority for the background on the FCRA; Hendricks'

18

interpretation of the FCRA and relevant legal precedent, however, will not aid the jury.  Advising the jury on the applicable law will remain within the province of this Court.  See Brown, 2020 WL 1479079, at *5; Williams, 2015 WL 9690018, at *4 (limiting Hendricks' testimony regarding the history of the FCRA).  As the Brown court found, and as this Court now finds, Hendricks may not testify about, or cite to, case law to describe privacy rights; the historical background of the FCRA, privacy rights, and Congressional findings on both; and FTC staff opinions.  Hendricks may only provide general background and context regarding the FCRA to the extent it is relevant as background information for his testimony and to the extent he has knowledge of it from his training and experience.  See Id.

### CONCLUSION

For the reasons expressed above, Defendant's motion to preclude the testimony of Plaintiff's putative expert, Hendricks (ECF No. 61), will be granted in part and denied in part consistent with this Opinion.

An appropriate Order follows.


Date: June 8, 2020                    s/ Noel L. Hillman
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.