**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JAMES REILLY,                                1:18-cv-12356-NLH-JS

        Plaintiff,

                                    **AMENDED OPINION**[1]

    v.

VIVINT SOLAR,

        Defendant.

**APPEARANCES:**

ANDREW M. MILZ
FLITTER MILZ, P.C.
1814 EAST ROUTE 70
SUITE 350
CHERRY HILL, NEW JERSEY 08003

JODY THOMAS LOPEZ-JACOBS
FLITTER MILZ, P.C.
1814 EAST ROUTE 70
SUITE 350
CHERRY HILL, NEW JERSEY 08003

    *Attorneys for Plaintiff.*

DANIEL J.T. MCKENNA
BALLARD SPAHR LLP
210 LAKE DRIVE EAST
SUITE 200
CHERRY HILL, NEW JERSEY 08002-1163

JENNY NICOLE PERKINS

---

[1] This Amended Opinion supersedes the Court's original June 8, 2020 Opinion (ECF No. 77). This Amended Opinion is the result of Defendant's June 22, 2020 Motion for Reconsideration or Clarification, (ECF No. 87), which the Court granted in it its Opinion and Order entered today. (ECF No. 106 and 107).

BALLARD SPAHR LLP
1735 MARKET STREET
51ST FLOOR
PHILADELPHIA, PENNSYLVANIA 19103

    *Attorneys for Defendant.*

**HILLMAN, District Judge**

    This Fair Credit Reporting Act ("FCRA") and identity theft matter comes before the Court on Defendant Vivint Solar's ("Defendant") motion for summary judgment (ECF No. 60), and Defendant's motion to strike certain supplemental facts submitted by Plaintiff in opposition to Defendant's motion for summary judgment (ECF No. 72).[2]  Plaintiff James Reilly ("Plaintiff") alleges Defendant's salespeople stole his identity by forging his signature on various documents and accessing his credit report without authorization, all to push through the sale of a solar panel system to a third party.  Defendant argues it had a permissible purpose for obtaining Plaintiff's consumer credit report under the FCRA, did not invade Plaintiff's privacy, and did not steal his identity.  For the reasons that follow, Defendant's motion to strike will be granted and Defendant's motion for summary judgment will be granted in part and denied in part.

---

[2] A third motion, Defendant's motion to preclude the expert testimony of Plaintiff's putative expert, Evan Hendricks (ECF No. 61) will be addressed in a separate Opinion and Order.

## **BACKGROUND**

The Court takes its facts from the parties' statements of material fact submitted pursuant to Local Civil Rule 56.1(a). Disputes are noted where relevant.

In 2008, Melissa Knight ("Knight") and her late husband purchased a home in Williamstown, New Jersey. That home was previously owned by Plaintiff and his wife before they sold it to Knight.

In July of 2016, Knight contacted Defendant to inquire about purchasing a solar panel system. On August 2, 2016, Phillip R. Chamberlain ("Chamberlain"), a former sales representative for Defendant, visited Knight at her home to discuss Defendant's products. After some discussion, Knight decided to purchase a solar panel system from Defendant. As part of that purchase, Knight appears to have authorized Defendant to inquire into her credit worthiness. Somehow, though, Defendant obtained a prospective consumer consent form ("PCCF"), which authorizes it to conduct inquiries into a prospective purchaser's credit worthiness, among other things, apparently signed by Plaintiff. Plaintiff finds this odd as he never communicated with Knight, Chamberlain, or Defendant about this transaction. Plaintiff avers that Chamberlain prefilled the PCCF with his information and forged his signature on that

document.

On August 2, 2016, after Chamberlain uploaded a PCCF purporting to bare Plaintiff's signature to Defendant's main system, and with that PCCF in hand, Defendant accessed Plaintiff's consumer credit report.  Plaintiff has identified copies of the relevant PCCF which contain both Plaintiff's and Knight's names and electronic signatures.

Solar panels were later installed on Knight's home, and Defendant filed a UCC financing statement indicating its security interest in the solar panel system.  Oddly, the UCC statement lists Plaintiff as the debtor.  On August 17, 2016, Defendant submitted a registration form to the State of New Jersey regarding the renewable energy credits generated by Knight's solar panel system.  That form, quite clearly, contains a hand-drawn signature purporting to be that of Plaintiff. Chamberlain admits, at least in part, that either he or Knight "could have" forged a document related to Knight's purchase.

As a result of these circumstances, Plaintiff took affirmative action to clear his name and credit history.  All of these circumstances created stress and anxiety for Plaintiff, and forced him to incur costs for counsel and identity theft protection services, among other things.

On May 29, 2019, Plaintiff filed the operative amended

complaint in this matter (ECF No. 49) (the "Amended Complaint"). The Amended Complaint contains three counts.  Count one alleges Defendant negligently or willfully violated the FCRA.  Count two alleges Defendant stole Plaintiff's identity, in violation of N.J.S.A. 2C:21-17.4.  Count three alleges common law invasion of privacy.  On October 15, 2019, Defendant filed its motion for summary judgment (ECF No. 60).  Plaintiff responded on December 2, 2019 (ECF No. 66).[3]  As such, Defendant's motion for summary judgment has been fully briefed as is ripe for adjudication.

While Defendant's motion for summary judgment remained under consideration by the Court, on February 18, 2020, Plaintiff filed additional disputed material facts (ECF No. 71), which Defendant moved to strike (ECF No. 72).  Plaintiff opposed Defendant's motion to strike (ECF No. 73).  As such, that motion is also ripe for adjudication.

---

[3] Plaintiff's papers in opposition to Defendant's motion for summary judgment (ECF No. 66) are filed under temporary seal. The Clerk advised Plaintiff that "pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed[.]"  ECF No. 66.  Plaintiff has not moved to seal Docket Entry Number 66.  Similarly, Defendant has filed various exhibits to its motions under seal without moving to have them permanently sealed.  See, e.g., ECF No. 60-3.  The Court will enter an Order requiring the parties to properly proceed with sealing applications or otherwise risk these documents being permanently unsealed by the Court.

5

<u>DISCUSSION</u>

**I.    Subject Matter Jurisdiction**

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**II.   Defendant's Motion To Strike Plaintiff's Supplemental Filing Will Be Granted And The Supplemental Material Will Not Be Considered In Deciding Defendant's Motion For Summary Judgment**

Before reaching the merits of Defendant's motion for summary judgment, the Court must resolve the parties' dispute regarding the appropriate scope of the factual record. Plaintiff filed a supplemental statement of disputed material facts in support of his opposition to Defendant's motion for summary judgment. (ECF No. 71).  Those supplemental facts are:

> 105. At the time Vivint Solar was receiving consumer complaints of fraud, forgery and impermissible credit pulls by Chamberlain in 2016 – 2017, the company was aware that impermissible credit pulls and bogus emails were a "big" problem and a "systemic issue."
>
> 106. Vivint was alerted to the "big" and "systemic" problem of impermissible credit pulls and the use of bogus email addresses in January 2017, at the latest, by a financing partner named Solar Mosaic, Inc.  Solar Mosaic is Vivint's co-defendant in a matter in a matter styled <u>Cardona and Brown v. Vivint Solar</u>, U.S.D.C. M.D. Fla. No. 8:18-cv-02838-SCB-JSS, and turned over scores of email communications with Vivint as ordered by the Middle District of Florida.
>
> 107. The consumer Plaintiffs in <u>Cardona</u> allege their signatures were forged by Vivint salesmen and their credit was pulled without their consent in January 2017 and September 2017, respectively.

6

> 108. As of January 2017, Vivint was aware of
> between 87 and 152 such "incidents" with Mosaic
> accounts in Florida alone.

(ECF No. 71 at ¶¶105-08) (internal citations omitted).  To

support these factual assertions, Plaintiff relies on material

produced in another matter involving Defendant, <u>Brown v. Vivint</u>

<u>Solar</u>, No. 8:18-cv-02838-SCB-JSS (M.D. Fla.) (the "Brown

Documents").  Plaintiff represents this material was unavailable

to him at an earlier time as the information first surfaced

during the exchange of discovery in the <u>Brown</u> action.[4]

Defendant argues that Plaintiff's supplemental statement of

disputed material fact should be stricken from the record

because (1) it violates Rule 56(c)(1)(A) of the Federal Rules of

Civil Procedure; (2) the material is beyond the scope of

discovery; (3) Plaintiff's use of the Brown Documents in this

case violates a confidentiality order entered in <u>Brown</u>; and (4)

the documents Plaintiff relies on do not support the

supplemental facts he advances.  (ECF No. 72-2).

Plaintiff argues that the newly discovered evidence should

be considered part of the record.  (ECF No. 73).  Plaintiff

argues that (1) the newly discovered evidence is within the

scope of discovery; (2) confidentiality designations in <u>Brown</u>

---

[4] Plaintiff's counsel is counsel to the plaintiffs in <u>Brown</u>, which
may explain how Plaintiff came to learn of the Brown Documents.

cannot prevent Plaintiff from using the Brown Documents in this case; and (3) the supplemental statements of material fact are relevant and therefore should be considered in deciding Defendant's motion for summary judgment.  The Court disagrees with Plaintiff's positions.

A. The Supplemental Material Will Not Be Considered In Deciding Defendant's Motion For Summary Judgment As It Is Not Temporally Relevant To The Claims At Issue

A party asserting the existence of a disputed material fact at the summary judgment stage must support that statement by citation to material in the record.  Fed. R. Civ. P. 56(c)(1)(A).  A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Armano v. Martin, 157 F. Supp. 3d 392, 400 (D.N.J. 2016), aff'd, 703 F. App'x 111 (3d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  Setting aside Rule 56's requirement that the supporting material be in the record, the Court finds that (1) in large part, Plaintiff's proffered statements are not temporally relevant to this action, and (2) the documentation Plaintiff relies upon in advancing those proffered statements do not support the positions he advances.

Plaintiff suggests the supplemental facts are relevant to whether Defendant knew of Chamberlain's fraudulent practices

8

before the incident involving Plaintiff occurred.  However, most of Plaintiff's proffered factual statements refer to information known first to Defendant in 2017, after Plaintiff filed this action and after the incident with Plaintiff occurred. Paragraph 105 is the only exception.  In paragraph 105, Plaintiff suggests Defendant had certain knowledge in 2016. Plaintiff's citation to the record, however, does not support that assertion.  Instead, the source cited is an email chain, the oldest email in which is dated January 6, 2017.  While the communications describe behavior occurring before that date, they do not specify when that conduct occurred, or when Defendant first became aware of it.  Therefore, the document relied upon by Plaintiff does not support Plaintiff's proposition that Defendant knew of Chamberlain's actions before the incident with Plaintiff occurred.

Because these supplemental facts and the material Plaintiff relies upon to support them are not temporally relevant to Defendant's motion for summary judgment – or in other words, they do not tend to prove Defendant had knowledge of Chamberlain's actions before the incident involving Plaintiff occurred - they will not be considered by the Court in deciding Defendant's motion for summary judgment and will be stricken

from the record.  For this reason, the Court need not address
the remainder of the parties' arguments on this issue.[5]

**III. Defendant's Motion For Summary Judgment**

a. Legal Standard

Summary judgment is appropriate where the Court is
satisfied that "'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits if any,' . . . demonstrate the absence of a genuine
issue of material fact" and that the moving party is entitled to
a judgment as a matter of law." Celotex Corp. v. Catrett, 477
U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. at
248.  A fact is "material" if, under the governing substantive
law, a dispute about the fact might affect the outcome of the
suit. Id. "In considering a motion for summary judgment, a
district court may not make credibility determinations or engage
in any weighing of the evidence; instead, the non-moving party's

---

[5] The Court recognizes that the Brown Documents are the subject
of a protective order entered by the United States District
Court for the Middle District of Florida.  While the Court
declines to consider the Brown Documents for reasons other than
application of that protective order, the Court recognizes the
Brown court's protective order would further support this
Court's decision not to consider the Brown Documents.

evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by []showing[]--that is, pointing out to the district court—-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Celotex, 477

U.S. at 324.  A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 257.

   b. Defendant's Motion For Summary Judgment Relating To
      Plaintiff's FCRA Claims

     Defendant argues it had a permissible purpose (or at least a good faith, reasonable belief that a permissible purpose existed) for obtaining Plaintiff's credit report.  Therefore, Defendant argues it did not violate the FCRA, either negligently or willfully.  Additionally, Defendant argues Plaintiff cannot establish harm or damages resulting from Defendant's actions. Judgment as a matter of law on these issues, the Court finds, would not be appropriate at this juncture.

      1. The FCRA's Permissible Purpose Standard & Applicable
         Legal Framework

12

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52, 127 S. Ct. 2201, 2205-06, 167 L. Ed. 2d 1045 (2007) (citing 15 U.S.C. § 1681; TRW Inc. v. Andrews, 534 U.S. 19, 23, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001)). To achieve this end, the FCRA regulates the use of consumer reports and prohibits using or obtaining a consumer report for any impermissible purpose. 15 U.S.C. § 1681b(f); Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1545, 194 L. Ed. 2d 635, 641 (2016) (citing 15 U.S.C. §§ 1681a(d)(1)(A)-(C); 15 U.S.C. § 1681b). The FCRA lists uses it deems permissible, two of which are relevant to this action. First, the FCRA permits use of consumer credit reports "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer[.]" 15 U.S.C. § 1681b(a)(3)(A). Second, a consumer report may be obtained if the user "otherwise has a legitimate business need for the information" in connection with a business transaction that is "initiated by the consumer[.]" 15 U.S.C. § 1681b(a)(3)(F).

The FCRA provides a cause of action against "[a]ny person who willfully fails to comply" or who "is negligent in failing

to comply" with the FCRA's permissible-use requirements.  15

U.S.C. §§ 1681n(a), 1681o(a).  Said differently, to prevail on a

claim under the FCRA, a plaintiff must prove both that the

defendant used or obtained the plaintiff's credit report for an

impermissible purpose, see 15 U.S.C. § 1681b(f), and that the

violation was either willful or negligent, 15 U.S.C. §§ 1681n,

1681o.

Defendant argues that dismissal is warranted if it had a

"reasonable belief" that it had a permissible use for obtaining

Plaintiff's consumer credit report.  Plaintiff adamantly opposes

application of this reasonable belief standard, arguing it is

inconsistent with the FCRA.  Defendant refers the Court to James

v. Interstate Credit & Collection, Inc., No. 03-cv-1037, 2005

U.S. Dist. Lexis 15495, *11 (E.D. Pa. July 29, 2005) in support

of its position.   In James, a court in the Eastern District of

Pennsylvania held that "[i]n evaluating whether the FCRA is

violated, 'so long as a user has reason to believe that a

permissible purpose exists, that user may obtain a consumer

report without violating the FCRA.'"  James, 2005 U.S. Dist.

LEXIS 15495, at *10 (quoting Korotki v. Attorney Servs. Corp.,

931 F. Supp. 1269, 1276 (D. Md. 1996), aff'd, 131 F.3d 135 (4th

Cir. 1997)).  Other courts have more recently questioned the

suitability of the reasonable belief standard.  See Brown v.

14

_Vivint Solar, Inc._, No. 8:18-cv-02838-SCB-JSS, 2020 U.S. Dist.
LEXIS 49675, *12-13 ("The law is somewhat unsettled regarding
whether the reasonable belief standard applies to lenders facing
liability under 15 U.S.C. § 1681b(f), as opposed to credit
reporting agencies to which the FCRA specifically sets forth a
reasonable belief standard in 15 U.S.C. § 1681b(a)(3).").

Whether Defendant's belief regarding its need for
Plaintiff's consumer report was reasonable appears at least
partially relevant to whether Defendant acted negligently or
intentionally.  Indeed, the plain language of the FCRA "focuses
on the intent of the party obtaining the [credit] report."
_Weitz v. Wagner_, No. 07-1106, 2008 U.S. Dist. LEXIS 61112, *14
(E.D.N.Y. July 24, 2008), _report and recommendation adopted_,
2008 U.S. Dist. LEXIS 62729 (E.D.N.Y. Aug. 11, 2008).  Such is
easily gleaned from the FCRA's plain language requiring a
successful plaintiff prove that a user obtained a credit report
negligently or in willful violation of the FCRA's permissible-
purpose standard.  15 U.S.C. §§ 1681n(a), 1681o(a) (imposing
liability upon "[a]ny person who _willfully_ fails to comply" or
who "is _negligent_ in failing to comply" with an FCRA
requirement) (emphasis added).

The Court views the reasonable belief standard in the
context of this case not as a standalone or separate rule of

law, but rather an alternative way of describing the intent
requirement inherent in the FCRA.  In other words, if a
defendant establishes that it acted reasonably to inquire into a
plaintiff's credit worthiness, it would appear to follow that
the defendant did not act negligently or willfully to violate
the statute.  Absent establishment of negligence or willfulness,
a plaintiff could not succeed on their claim.  Therefore, guided
by the relevant FCRA provisions, the Court finds it must focus
at this juncture on whether Defendant (1) accessed Plaintiff's
consumer credit report without a permissible purpose and (2)
whether a jury could determine that Defendant did so negligently
or willfully.  Because Plaintiff has identified facts from which
a jury could find that Defendant did not have a permissible
purpose for obtaining Plaintiff's credit report, and because
Plaintiff has also identified facts from which a jury could
determine Defendant acted negligently or willfully, summary
judgment must be denied.

> 2. Plaintiff Has Identified Evidence From Which A Jury
> Could Find Defendant Lacked A Permissible Purpose For
> Obtaining Plaintiff's Consumer Credit Report
>
> i. 15 U.S.C. § 1681b(a)(3)(A)

15 U.S.C. § 1681b(a)(3)(A) permits use of a consumer credit
report if the user "intends to use the information in connection
with a credit transaction involving the consumer on whom the

16

information is to be furnished and involving the extension of
credit to, or review or collection of an account of, the
consumer[.]" 15 U.S.C. § 1681b(a)(3)(A).  The Third Circuit has
recognized that "§ 1681b(a)(3)(A) authorizes access to a
consumer's credit report 'when the consumer applies for
credit[.]'" Huertas v. Citigroup, Inc., 639 Fed. Appx. 798, 801
(3d Cir. 2016) (quoting Gelman v. State Farm Mut. Auto. Ins.
Co., 583 F.3d 187, 191 (3d Cir. 2009)).

     Defendant argues that, because it intended to use
Plaintiff's consumer credit report in connection with pre-
approving Plaintiff for credit, it had a permissible use under
15 U.S.C. § 1681b(a)(3)(A).  That is so, Defendant argues,
because it had forms uploaded to its system purporting to
contain Plaintiff's signature evincing his interest in obtaining
credit from Defendant.  Plaintiff argues that Defendant's
intentions are not so clear because (1) Defendant's salesman,
Chamberlain, forged the document purporting to evince that
Plaintiff applied for credit and (2) if Chamberlain's knowledge
is imputed to Defendant, Defendant's intentions appear less
noble.  Defendant counters that Chamberlain's knowledge cannot
be imputed to it.

     The parties clearly disagree about whether Chamberlain's
knowledge may be imputed to Defendant.  Therefore, the Court

17

must determine, as a legal matter, whether Chamberlain's

knowledge may be imputed to Defendant and the Court finds that,

under the facts identified by Plaintiff, Chamberlain's knowledge

may be properly imputed to Defendant.

The parties vacillate between the concepts of imputation of

knowledge and vicarious liability.  While both concepts are

related agency principles, they are nonetheless distinct.

Certainly, knowledge may be imputed from an agent to a master

without necessarily creating vicarious liability.  The Court has

attempted to parse the differences where relevant.

While it appears neither the Third Circuit nor this

District (outside of this Court) have yet opined on whether an

employer can be held vicariously liable for actions of an

employee or agent under the FCRA, a growing number of courts

agree that traditional agency principles apply in the FCRA

context, which may result in the creation of vicarious

liability.  See, e.g., Jones v. Federated Financial Reserve

Corp., 144 F.3d 961, 966 (6th Cir. 1998) ("Failure to impose

vicarious liability on a corporation . . . would allow it to

escape liability for 'willful' or 'negligent' violations of the

statute.  Because a company . . . can act only through its

agents, it is difficult to imagine a situation in which a

company would ever be found to have willfully violated the

18

statute directly by obtaining a credit report for an
impermissible purpose"); Yohay v. City of Alexandria Employees
Credit Union, Inc., 827 F.2d 967, 973 (4th Cir. 1987) (holding
an employer liable for its agent's intentional acts where the
agent had apparent authority to obtain a credit report).  The
Third Circuit has cited Jones approvingly, suggesting its
approval of the application of traditional agency law principles
in the FCRA context.  See Barbato v. Greystone All., LLC, 916
F.3d 260, 269 (3d Cir.), cert. denied sub nom. Crown Asset Mgmt.
LLC v. Barbato, 140 S. Ct. 245, 205 L. Ed. 2d 129 (2019) (citing
Jones, 144 F.3d at 965).  More affirmatively, the Third Circuit
has explained that "when Congress creates a tort action, it
legislates against a legal background of ordinary tort-related
vicarious liability rules[.]"  Barbato, 916 F.3d at 269.

     There seems to be no dispute that Chamberlain was
Defendant's agent when he visited with Knight and, as Plaintiff
argues, when he forged documents in Plaintiff's name.  Under
traditional agency law principles, an agent has a duty to
disclose material information to the principal, and the
principal is "deemed to have knowledge" of those material facts.
In re WL Homes, LLC, 534 Fed. Appx. 165, 169 (3d Cir. 2013)
(citation omitted).  In determining the legal relationship
between a principal and a third-party with whom the principal's

agent has interacted, "notice of a fact that an agent knows or
has reason to know is imputed to the principal if knowledge of
the fact is material to the agent's duties to the principal[.]"
Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 106
(3d Cir. 2009) (quoting Restatement (Third) of Agency § 5.03
(2006)) (emphasis removed).  To justify imputing an agent's
knowledge of facts to a master, the facts must be important or
significant to the agent's duties to the master.  Id. at 106-07
(emphasis removed).  Information is deemed material when the
"employee uses that knowledge in the performance of the
employee's duties to the employer."  Id.

     In this case, the completion of credit forms appears
material to Chamberlain's job duties.  Indeed, Defendant argues,
in part, that it ran Plaintiff's credit based upon completion of
these forms, and that its sales representatives are tasked with
obtaining prospective customers' signatures on them.  While
Defendant argues that forging an application form would render
Chamberlain's actions outside the scope of his employment, the
Court disagrees.  While the act of forgery itself may not have
been approved by Defendant, it is beyond dispute that completion
of the forms were squarely within Defendant's expectations of
its salespeople.  For example, the Court of Appeals for the
First Circuit has found, albeit under Maine law, that the

intentional tort of rape committed by an inn worker may lead to
vicarious liability where the worker was (1) the defendant's
agent, (2) was armed with information only available through his
employment role, (3) had access to the room where the
intentional tort occurred through his employment role, and (4)
used that access to commit the act.  Costos v. Coconut Island
Corp., 137 F.3d 46, 50 (1st Cir. 1998).  Chamberlain had similar
access points in this action.  A jury could find that (1)
Chamberlain was being held out as Defendant's agent or
representative, (2) Chamberlain was armed with information about
Plaintiff available through Chamberlain's relationship with
Defendant (namely, information Chamberlain may have uploaded to
the application form without Plaintiff's permission), (3)
Chamberlain used that information to complete a form in
Plaintiff's name, and (4) Chamberlain used his access to that
information to commit an intentional act harming Plaintiff.  The
Court finds Costos analogous and persuasive.  Therefore, the
Court concludes that an intentionally harmful act by Chamberlain
does not necessarily immunize Defendant from vicarious liability
or imputation of Chamberlain's knowledge.  Such would, as the
Jones court recognized, essentially leave victims of an agent's
actions without recourse for intentional acts committed while
under the employ of a master.  See Jones, 144 F.3d at 966.  Such

21

an outcome appears inconsistent with Congressional intent in enacting the FCRA, namely, to protect consumers from unauthorized access to consumer reports.  See Safeco Ins. Co. of Am., 551 U.S. at 52, 127 S. Ct. at 2205-06.

Defendant directs this Court to a number of cases it suggests compel an alternative conclusion, the most factually analogous of which is Kennedy v. Victoria's Secret Store, Inc., No. 03-2691, 2004 U.S. Dist. LEXIS 19525 (E.D. La. Sept. 29, 2004).  In Kennedy, the plaintiff visited a Victoria's Secret store to purchase goods.  The plaintiff attempted to purchase goods with her American Express card, but instead of charging the American Express card, the cashier surreptitiously opened a Victoria's Secret credit card in the plaintiff's name and charged her purchase to that account.  Id. at *1-2.  The plaintiff was not aware the account had been opened until she received the physical credit card and a statement in the mail.  Id. at *3.  The plaintiff pursued an FCRA action alleging the defendant did not have a permissible purpose for obtaining her consumer report.  The defendant argued it had a permissible purpose under 15 U.S.C. § 1681b(a)(3)(A) because the report was obtained for purposes of extending the plaintiff credit.  The plaintiff, however, maintained she never applied for that line of credit.  In a single paragraph examining the vicarious

liability issue, the Kennedy court determined that "the consumer report allegedly obtained by VS and WFNNB was obtained for the purposes of using the information to extend credit or to review or collect on an account.  Therefore, [the plaintiff's] claims under 15 U.S.C. § 1681b should be dismissed."  Id. at *9.

While Defendant relies on Kennedy, the Kennedy court does not appear to have thoroughly applied or analyzed the issue of vicarious liability or imputed knowledge.  Therefore, the Court finds it of only limited guidance.  If Kennedy was good law, corporate entities could essentially escape FCRA liability by hiding behind an agent's or employee's inappropriate actions; such a conclusion appears contrary to the purpose of the FCRA, which among other things, seeks to protect consumer privacy and restrict improper use of consumer credit information.  See Safeco Ins. Co. of Am., 551 U.S. at 52, 127 S. Ct. at 2205–06; Jones, 144 F.3d at 966.  Additionally, such an outcome would, as the Jones court recognized, essentially immunize employers from liability for their employees' improper actions and would significantly frustrate a victim's ability to enforce their rights under the FCRA.  In balancing Jones and Kennedy, the Court finds that the holding in Jones teaches the proper result.

Defendant also argues it has policies against forging PCCFs and informs its salespeople about the potential illegality of

violating those rules.  Because Plaintiff's allegations indicate Chamberlain acted outside the scope of those polices, Defendant argues that Chamberlain's actions should be deemed outside the scope of his employment.  However, a companies' preventive measures and polices are no defense to liability when its employee intentionally acts in a manner that would violate the FCRA.  Todd v. Target Corp., No. 10-cv-05598, 2012 WL 1080355, at *4 (N.D. Ill. Mar. 30, 2012).

For these reasons, the Court finds it may be appropriate to impute Chamberlain's knowledge to Defendant.  Finding as much, the Court leaves to the jury to determine (1) whether or not the PCCF was actually forged, (2) whether or not Chamberlain intentionally forged that document, (3) whether such knowledge should be imputed to Defendant, and (4) whether that knowledge renders Defendant's actions negligently or willfully in violation of the FCRA.

ii.  15 U.S.C. § 1681b(a)(3)(F)

As relevant to this action, 15 U.S.C. § 1681b(a)(3)(F) permits use of a consumer's credit report if the user "otherwise has a legitimate business need for the information" and if such use is in connection with a business transaction that is initiated by the consumer.

The parties dispute whether Defendant violated this

section.  Defendant argues it had a reasonable belief that
Plaintiff initiated a business transaction with Defendant based
upon the forms uploaded to its system.  Plaintiff identifies
evidence suggesting (1) Chamberlain and Plaintiff never met or
spoke and (2) Plaintiff never authorized Defendant to conduct a
credit inquiry or file documents with the State of New Jersey on
his behalf.  On the facts presented, a jury may find there was
never a "business transaction" initiated by Plaintiff.

     "[A] request for general information about products and
prices offered does not involve a business transaction initiated
by the consumer."  Boone v. T-Mobile USA Inc., No. 17cv-378-KM-
MAH, 2018 WL 588927, at *14 (D.N.J. Jan. 29, 2018) (quoting FTC
Advisory Opinion on the Fair Credit Reporting Act, 1998 WL
34323748, at *1 (Feb. 11, 1998)).  For example, a consumer who
asks a car dealer to "test drive" a car, or asks questions about
pricing and financing, "is not necessarily indicating an intent
to purchase or lease a vehicle from that particular dealer."
Id. (quoting FTC Advisory Opinion on the Fair Credit Reporting
Act, 1998 WL 34323748, at *1).  Obtaining a consumer's credit
report based solely upon such early-stage inquires is
inappropriate and violates the FCRA.  Id. (quoting FTC Advisory
Opinion on the Fair Credit Reporting Act, 1998 WL 34323748, at
*1).

For example, in <u>Boone</u>, the plaintiff alleged he made a general inquiry with T-Mobile about the availability and cost of phone plans.  The plaintiff never signed any agreement and never agreed to purchase products or services from T-Mobile.  On those facts, the court in <u>Boone</u> found the plaintiff's actions did not amount to a business transaction initiated by the consumer.

Plaintiff has identified evidence from which a jury could find Defendant knew Plaintiff never authorized inquiry into his credit and never indicated a desire to purchase Defendant's products.  Indeed, Plaintiff has identified evidence suggesting he never spoke to Chamberlain or Defendant.  Such circumstances would not amount to initiation of a business transaction under the FCRA and would not permit Defendant to access Plaintiff's credit report.

Moreover, as the court in <u>Boone</u> explains, "[o]nly in those circumstances where it is clear both to the consumer and to the [seller] that the consumer is actually initiating the purchase [of a product]" may a seller have "obtain a report without written permission" <u>Boone</u>, 2018 WL 588927, at *14 (quoting <u>FTC Advisory Opinion on the Fair Credit Reporting Act</u>, 1998 WL 34323748, at *1).  Having never communicated with Defendant, it would follow that Plaintiff never clearly understood he was

engaging in some transaction with Defendant.  As such, summary judgment must be denied.

> iii. Plaintiff Can Establish Viable Injuries And May Proceed With On His Damages Theory Based On Emotional Harm

Plaintiff alleges he suffered emotional distress as a result of Defendant's actions.  Defendant argues Plaintiff has not sufficiently established that he suffered any actual damage, requiring dismissal of his claim.

A plaintiff may recover actual, punitive, or statutory damages for willful violations of the FCRA, but may recover only actual damages for negligent violations.  15 U.S.C. § 1681o(a); 15 U.S.C. § 1681n(a); Brown, 2020 U.S. Dist. LEXIS 49675, at *11.  Emotional distress damages are recoverable as actual damages under the FCRA.  Cortez v. Trans Union, LLC, 617 F.3d 688, 719-20 (3d Cir. 2010).  The Third Circuit has held that proof of such injury does not require "corroborating testimony or medical or psychological evidence in support of the damage award."  Id. at 720 (citation omitted).  Such corroboration, our Circuit has held, "goes only to the weight of evidence of injury, not the existence of it."  Id.  Therefore, if a jury accepts testimony of a plaintiff that establishes an injury without corroboration, the plaintiff should be allowed to recover under the FCRA.  Id.  The fact that a plaintiff's

injuries relate to the stress and anxiety caused by a
defendant's conduct does not change that.  Indeed, "this is
precisely the kind of injury that Congress must have known would
result from violations of the FCRA."  Id.

Plaintiff has identified evidence, including his own
testimony, on which a jury could find he suffered emotional
distress from Defendant's actions.  As such, the issue must be
submitted to the jury.  Additionally, because there remains a
live claim for willful FCRA violations, Plaintiff may proceed on
punitive and statutory damage claims allowable for a willful
violation.  Finding that Plaintiff may proceed on at least one
damages theory, the Court need not decide at this juncture
whether Plaintiff's other damages claims (for out of pocket
costs) may be permitted.  The parties may address those matters
in motions in limine.

B. Defendant's Motion For Summary Judgment Relating To
   Plaintiff's Identity Theft/Forgery Claims

Defendant argues that Plaintiff's identity theft claim must
be dismissed because there is no vicarious liability under the
identity theft statute.  Contrary to Defendant's presentation of
the issue, Plaintiff appears to have alleged that it was
Defendant itself – either alone or through its agent – that
stole Plaintiff's identity.  Because Plaintiff has identified
evidence from which a jury could determine that to be true, the

28

Court will not grant summary judgment on this claim.

N.J.S.A. 2C:21-17.4 provides in relevant part that "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use of that person's personal identifying information, . . . may bring an action in any court of competent jurisdiction." The Court can locate only a handful of decisions discussing the contours of this statutory provision. Of those cases, Defendant has identified several that it argues support a finding that N.J.S.A. 2C:21-17.4 applies exclusively against the "thief" as opposed to the thief's employer. Piscitelli v. Classic Residence by Hyatt, 973 A.2d 948, 967 (N.J. Super. Ct. App. Div. 2009) ("N.J.S.A. 2C:21-17.4 provides a civil remedy for identity theft for the victim. It provides for treble damages, costs, and attorneys' fees. Its relief, though, is directed against the thief."). The cases Defendant refers to include Fogarty v. Household Fin. Corp. III, No. 14-4525 RBK/JS, 2015 WL 852071, at *15 (D.N.J. Feb. 25, 2015). In Fogarty, the plaintiff alleged that the defendant negligently or mistakenly relied on a third party's representation he was the plaintiff. Because the plaintiff did not allege that the defendant purposefully assisted that third party in obtaining the plaintiff's information, or that the defendant intended to use the information it received for a

29

fraudulent purpose, the court found the plaintiff's identity
theft claim against the defendant could not proceed.   The
present action is distinguishable from Fogarty.   Plaintiff
alleges Defendant and its agent, Chamberlain, were the ones that
procured and misappropriated his identity.   Indeed, according to
Plaintiff, it was Defendant through its agent that stole his
identity and used it to its benefit.   Plaintiff has identified
numerous forms procured by Defendant on which appears
Plaintiff's name and signature, despite having never signed
those documents or engaging with Defendant.   Moreover,
Chamberlain – in carrying out the business of Defendant as its
agent – has admitted that either he or Knight "could have"
forged Plaintiff's signature.   On that basis, a jury could find
that Defendant (or its agent, and therefore it) was the thief of
Plaintiff's information.   The essential distinction between the
cases Defendant relies upon and this action is that Plaintiff
has sufficiently alleged that it is this Defendant that stole
his identity.   As such, the issue will be submitted to the fact
finder.

     C. Defendant's Motion For Summary Judgment Relating To
       Plaintiff's Invasion of Privacy Claims

     Plaintiff narrows his privacy claim to one under a "false
light" theory, arguing that he was held out in a false light
based upon Defendant's recording of a UCC lien filed in his

name.

The tort of false light, involves "publicity that unreasonably places the other in a false light before the public." Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1115–16 (N.J. 2009) (quoting Romaine v. Kallinger, 537 A.2d 284 (N.J. 1988)).  The tort of false light has two elements: (1) "the false light in which the other was placed would be highly offensive to a reasonable person"; and (2) "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  Id. (quoting Romaine, 537 A.2d 284).  The New Jersey Supreme Court has suggested that evidence of a false statement and knowledge that the false statement would cause public response were the "bare minimum" needed for a  plaintiff to be able to proceed on such a claim.  Id. at 1116.  In this case, Plaintiff has sufficiently pointed to statements that Defendant could have known to be false, namely, that Plaintiff was indebted to Defendant, and that others could reasonably be found to rely on that statement.

However, as Defendant correctly recognizes, false light claims carry a one-year statutory limitations period.  Flanagan v. City of Atl. City, No. A-3647-12T3, 2014 WL 6861583, at *5–6 (N.J. Super. Ct. App. Div. Dec. 8, 2014).  That period begins to

run from the date of publication.  Id. at *6 (quoting Swan v. Boardwalk Regency Corp., 969 A.2d 1145 (N.J. Super. Ct. App. Div. 2009)).  The UCC statement that Plaintiff bases his false light claim upon was filed in October of 2016.  (ECF No. 66-1 at ¶41).  Plaintiff did not file this action until August 2, 2018. As such, Plaintiff's false light claim is barred by the applicable statute of limitations and must be dismissed.

## CONCLUSION

For the reasons expressed above, (1) Defendant's motion to strike certain supplemental facts submitted by Plaintiff in opposition to Defendant's motion for summary judgment (ECF No. 72) will be granted; (2) Defendant's motion for summary judgment (ECF No. 60) will be granted in part and denied in part; and (3) as expressed in footnote three, the parties shall have fourteen (14) days to file any relevant motions to seal.

An appropriate Order will be entered.


Date:  January 26, 2021__            /s Noel L. Hillman__    __
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.